## THE STATE vs. GEORGE CARTER.

1. An indictment charging a felonious assault and battery in New York, and that the party injured came into, and died from its effects in New Jersey, charges no crime against this state.

2. The statute, (*Nix. Dig.* 184, § 3,) cannot embrace cases where the act complained of has been wholly done within the territorial limits of another regular government.

3. Any statute to punish such an act is necessarily void.

This cause was tried at the Hudson Oyer and Terminer, and was brought before this court on questions reserved upon the trial. The facts in the case and the points presented to the court appear in the opinion delivered in this court.

Argued at February Term, 1859, before the CHIEF JUSTICE and Justices OGDEN, VREDENBURGH and WHELPLEY.

*Littell* and *W. L. Dayton*, for state.

*Wright*, for defendant.

The opinion of the court was delivered by

VREDENBURGH, J. The indictment charges that the defendant, on the 29th of December, 1858, in the city of

New York, gave one Brushingham several mortal bruises, of which, until the 31st of December, 1858, as well in New York as in Hudson county, in this state, he languished, and of which, in said Hudson county, he then died. To this indictment the defendant, pleaded that the court had not jurisdiction of the cause. The defendant, we must assume, was a citizen of the State of New York. Nothing was *done* by the defendant in this state. When the blow was given, *both* parties were out of its jurisdiction, and within the jurisdiction of the State of New York. The only fact connected with the offence, alleged to have taken place within our jurisdiction, is, that *after* the injury, the deceased came into, and died in this state. This is not the case where a man stands on the New York side of the line, and shooting across the border, kills one in New Jersey. When that is so, the blow is in fact struck in New Jersey. It is the defendant's act in' this state. The passage of the ball, after it crosses the boundary, and its actual striking, is the continuous act of the defendant. In all cases the criminal act is the impinging of the weapon, whatever it may be, on the person of the party injured, and that must necessarily be where the impingement happens. And whether the sword, the ball, or any other missile, passes over a boundary in the act of striking, is a matter of no consequence. The act is where it strikes, as much where the party who strikes stands out of the state, as where he stands in it.

Here no act is done in this state by the defendant. He sent no missile, or letter, or message, that operated as an act within this state. The coming of the party injured into this state afterwards was his own voluntary act, and in no way the act of the defendant. If the defendant is liable here at all, it must be solely because the deceased came and died here after he was injured. Can that, in the nature of things, make the defendant guilty of murder or manslaughter here? If it can, then for a year after an injury is inflicted, murder, as to its jurisdiction, is am-

bulatory at the option of the party injured, and becomes punishable, as such, wherever he may see fit to die. It may be manslaughter, in its various degrees, in one place, murder, in its various degrees, in another. Its punishment may be fine in one country, imprisonment, whipping, beheading, strangling, quartering, hanging, or torture in another, and all for no act done by the defendant in any of these jurisdictions, but only because the party injured found it convenient to travel.

This is not like the case of stolen goods, carried from one state to another, or of leaving the state for any purpose whatever, like that for fighting a duel, or of sending a letter or messenger, or message, for any purpose, into another state; for in all these cases the cognizance is taken for an *act done* within the jurisdiction.

If the acts charged in this indictment be criminal in New Jersey, it must be either by force of some statute or upon general principles. There is no statute, unless it be the act to be found in *Nix. Dig.* 184, § 3. But this evidently relates to murder only, and not to manslaughter.

But I cannot make myself believe that the legislature, in that act, intended to embrace cases where the injury was inflicted within a foreign jurisdiction, without any act done by the defendant within our own. Such an enactment, upon general principles, would necessarily be void ; it would give the courts of this state jurisdiction over all the subjects of all the governments of the earth, with power to try and punish them, if they could by force or fraud get possession of their persons in all cases where personal injuries are followed by death.

An act, to be criminal, must be alleged to be an offence against the sovereignty of the government. This is of the very essence of crime punishable by human law. How can an act done in one jurisdiction, be an offence against the sovereignty of another? All the cases turn upon the question where the act was done. The person who does it may, when he does it, be within or without the juris-

diction, as by shooting or sending a letter across the border; but the act is not the less done within the jurisdiction because the person who does it stands without. This case is not at all like those where the defendant is tried in England for a crime committed in one of the dependencies of the British empire. There the act is done, and the crime is in fact committed against the sovereignty of the British crown, and only the place of trial is changed.

If our government takes jurisdiction of this case, it must be not by virtue of any statute, but because it assumes general power to punish acts *mala in se* wherever perpetrated in the world. The fact of the party injured can give no additional jurisdiction.

Such crimes may be committed on the high seas, in lands where there are, or where there are not regular governments established. When done upon the high seas, they may be either upon our vessels or upon vessels belonging to other governments. When done upon our vessels, in whatever solitary corner of the ocean, from the necessity of the case, and by universal acceptance, the vessel and all it contains is still within our jurisdiction, and when the vessel comes to port the criminal is still tried for *an act done* within our jurisdiction. But we have never treated acts done upon the vessels of other governments as within our jurisdiction, nor has such ever been done by any civilized government.

When an act *malum in se* is done in solitudes, upon land where there has not yet been formally extended any supreme human power, it may be that any regular government may feel, as it were, a divine commission to try and punish. It may, as in cases of crime committed in the solitudes of the ocean, upon and by vessels belonging to no government, *pro hac vice* arrogate to itself the prerogative of omnipotence, and hang the pirate of the land as well as of the water. Further than this it could not have been intended that our statute should apply. But here the act was done in the State of New York, a

regularly organized and acknowledged supreme government. The act was a crime against their sovereignty. That was supreme within its territorial limits and in its very nature, and in fact is exclusive. There cannot be two sovereignties supreme over the same place at the same time over the same subject matter. The existence of theirs is exclusive of ours. We may exercise acts of sovereignty over the wastes of ocean or of land, but we must necessarily stop at the boundary of another. The allegation of an act done in another sovereignty, to be a violation of our own, is simply alleging an impossibility, and all laws to punish such acts are necessarily void.

It is said that if we do not take jurisdiction, the defendant will go unpunished, inasmuch as the party injured not dying in New York, he could not be guilty of murder there. But New York may provide by law for such cases, and if she does not, it is their fault, and not ours. The act done is against their sovereignty, and if she does not choose to avenge it, it is not for us to step in and do it for them.

I think that the Oyer and Terminer should be advised that no crime against this state is charged in the indictment.

CITED *in State* v *Wyckoff*, 2 *Vr.* 68.